IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| MICHAEL A. AUSTIN, | ) |
| Plaintiff, | ) |
| vs. | ) CV-01-H-0376-S |
| LT. R.V. MOORE, et al., | ) |
| Defendants. | ) |

**ENTERED**

MAR 2 6 2002

**MEMORANDUM OF OPINION**

This is a civil action pursuant to 42 U.S.C. § 1983 in which the plaintiff, Michael Austin, alleges that his constitutional rights were violated while he was incarcerated in the Bibb County Correctional Facility in Brent, Alabama. In his *pro se* amended complaint, the plaintiff names as defendants Lt. R.V. Moore, COII M. Hazely[1], Lt. E. Evans, Sgt. T. Chenshaw[2], COII D. Fails, COII G. Hogue, COII Louder, and COII Talley and alleges that these defendants used excessive force on him. (Document # 7). As compensation for the alleged constitutional violations, the plaintiff seeks money damages. In accordance with the usual practices of this Court and 28 U.S.C. § 636(b)(1)(B), the complaint was referred to the magistrate judge for a preliminary review and recommendation. *See McCarthy v. Bronson*, 500 U.S. 136, 111 S. Ct. 1737, 114 L. Ed. 2d 194 (1991).

The magistrate judge entered an Order for Special Report (Document # 8), directing that copies of the complaint in this action be forwarded to defendants Moore, Hazley, Evans, Crenshaw, Fails, Hogue, Louder, and Talley. The order requested that they file a special report addressing the

---

[1] Correct spelling "Hazley."

[2] Correct spelling "Crenshaw."

factual allegations of the plaintiff's complaint. The defendants were advised that the special report could be submitted under oath or accompanied by affidavits and, if appropriate, would be considered as a motion for summary judgment filed pursuant to Rule 56 of the FEDERAL RULES OF CIVIL PROCEDURE. By the same order, the plaintiff was advised that after he received a copy of the special report submitted by the defendants he should file counter affidavits if he wished to rebut the matters presented by defendants in the special report. The plaintiff was further advised that such affidavits should be filed within twenty days after receiving a copy of the defendants' special report.

The defendants filed special reports (Document # 14 & 15), accompanied by their affidavits and pertinent documents. The plaintiff was thereafter notified that he would have twenty days to respond to the motion for summary judgment, filing affidavits or other material if he chose. The plaintiff was advised of the consequences of any default or failure to comply with FEDERAL RULE OF CIVIL PROCEDURE 56. *See Griffith v. Wainwright*, 772 F.2d 822, 825 (11th Cir. 1985). The plaintiff filed a response. (Document # 19).

## **SUMMARY JUDGMENT STANDARD**

In considering a motion for summary judgment, the court must determine whether the moving party is entitled to judgment as a matter of law. Summary judgment may be granted only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56. In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 S. Ct. 265 (1986). The burden of proof is upon the moving party to establish his prima facie entitlement to summary judgment by showing

the absence of genuine issues and that he is due to prevail as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). Once that initial burden has been carried, however, the non-moving party may not merely rest upon his pleading, but must come forward with evidence supporting each essential element of his claim. *See Celotex Corp.*, 477 U.S. 317; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S. Ct. 2505, 91 S. Ct. 365 (1986); *Barfield v. Brierton*, 883 F.2d 923 (11th Cir. 1989). Unless the plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial and the moving party is entitled to judgment as a matter of law. *See Celotex Corp.*, 477 U.S. 317; *Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990), *cert. denied*, 498 U.S. 1103, 111 S. Ct. 1003, 112 L. Ed. 2d 1085 (1991). As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

*Bennett*, 898 F.2d at 1532 (citation omitted). However, any "specific facts" pled in a *pro se* plaintiff's sworn complaint must be considered in opposition to summary judgment. *See Perry v. Thompson*, 786 F.2d 1093 (11th Cir. 1986).

## **FACTUAL ALLEGATIONS**

The plaintiff asserts that the named defendants utilized unnecessary excessive force against his person. (Document # 7, at 4-7). Applying the foregoing standard to the facts before the court, the following facts are undisputed or, if disputed, are taken in a light most favorable to the plaintiff.

3

The plaintiff was incarcerated in Bibb County Correctional Facility on January 11, 2001. *Id.* at 4. On that date, at approximately 6:30 a.m., the plaintiff was beaten by corrections officers while a supervising officer looked on and failed to assist the plaintiff. *Id.* at 4-7. Each defendant participated in the beating in the following manner:

Lt. RV Moore[3] hit the plaintiff several times with a baton in the lower back and rib area; COI M. Hazley[4] hit the plaintiff several times in the upper and lower rib area on the left side of the plaintiff's body; COII T. Crenshaw[5] hit the plaintiff in the face with a radio causing serious injury to the plaintiff's eye; COII Fails[6] hit the plaintiff several times in the side of the head; COII G.

---

[3] Defendant Moore states, "At no time did I touch Inmate Austin. At no time did this defendant strike inmate Austin with a baton, his hand or other object . . . . At no time did I witness any Correctional Officer use excessive force while restraining Inmate Austin." (Exhibit A to Document # 15).

[4] Defendant Hazley states, "[The] allegations by inmate Austin are fabricated and I, Mickeal Hazley have no knowledge of it. I . . . also deny striking inmate Austin or know of any other officers or employees who has struck (sic) inmate Michael Austin." (Exhibit 2 to Document # 14) and (Exhibit D to Document # 15).

[5] Defendant Crenshaw states that she "did not, intentionally, hit the plaintiff, inmate Michael Austin, in the face with a radio causing serious injury to the plaintiff's eye. . . . [I] did have a repeater radio in [my] right hand, which may have inadvertently hit the [plaintiff] in the facial area due to the plaintiff's resistance to being restrained." (Exhibit H to Document # 15).

[6] Defendant Fails states, "[A]t no time did I . . . strike inmate Michael Austin. I categorically deny any allegation of wrongdoing." (Exhibit C to Document # 15).

Hogue[7] hit the plaintiff in the face with her closed fist; COI Louder[8] hit the plaintiff in the stomach and chest area; COI Talley[9] hit the plaintiff in the face and head; and Lt. E. Evans[10] watched while these officers beat the plaintiff and made no attempt to intervene in the plaintiff's behalf.[11]

Plaintiff contends that the use of force against him was "unnecessary [and] . . . malicious." *Id.* at 5. He further asserts that the defendants "displayed cruel and unusual punishment" by beating him severely, and that he has suffered damages as the result of same, including but not limited to, permanent injury to his left eye, "[e]motional distress, mental anguish, frustration, humiliation and embarrassment." *Id.* at 5-6.

---

[7] Defendant Hogue denies "using any excessive unnecessary force at any time as indicated by inmate Austin. I also deny hitting inmate Austin with a closed fist. Inmate Austin approached me in a threatening manner; at that time I applied a Brachial Plexus Origin and no other force was used by me. I . . . . deny the allegations made by inmate Austin regarding my actions on January 11, 2001." (Exhibit E to Document # 15).

[8] Defendant Louder denies "hitting the plaintiff at any time. . . . I deny any allegations of wrong doing during this incident." (Exhibit F to Document # 15).

[9] Defendant Talley states, "I deny his allegation. I was not involved in the alleged altercation or any situation with the plaintiff." (Exhibit 3 to Document # 14) and (Exhibit G to Document # 15).

[10] Defendant Evans states that he was "sitting in the ICS section of the shift office preparing squad rosters for checkout. I looked up briefly when I heard a commotion near the back of the shift office. I quickly assessed that the officers on the shift had the situation under control; therefore, I continued preparing for squad checkouts never leaving my seat." ( Exhibit 1 to Document # 14) and (Exhibit B to Document # 15).

[11] The defendants also attach a certified copy of Institutional Incident Report, in which defendants Hogue, Crenshaw, Louder and Fails submit statements concerning the January 11, 2001, confrontation with the plaintiff. (Exhibit I to Document # 15). In it, the defendants contend that the plaintiff was loud and belligerent in stating that he was not masturbating, and that he was waving his arms around as he spoke. *Id.* The plaintiff was ordered by Hogue to allow himself to be handcuffed. However, plaintiff refused and made a gesture as if to grab Officer Hogue. Thereafter, defendants Hogue, Crenshaw, Louder and Fails had to forcibly restrain the plaintiff. These statements are not sworn to under penalty of perjury. Plaintiff contests the validity of the incident report. (Document # 19, at 4).

Plaintiff's troubles began on the morning of January 11, 2001, when he was seen masturbating by Officer Hogue. (Document # 19, at 3). He explains that he did not know that Officers Hogue and Louder had entered the dorm to do a "re-call[12]" because "usually when this is done, the lights would come back on, and a second announcement would be made, but on this particular morning this was not done, and [Officer Hogue] surprised me when she came up from behind me . . . . [A]t that time, I did not know either of the officers had returned to the dorm . . . . Once Officer Hogue went pas[t] me, . . . I immediately covered myself up." *Id.* Some time later, Officer Louder came to the plaintiff's bed, informed him that Officer Hogue reported that [plaintiff] had been masturbating, and informed him that he would have to go to the shift office. *Id.*

Plaintiff contends that he offered the foregoing explanation to Lt. Moore in the shift office that morning. *Id.* at 3-4. Thereafter, Lt. Moore instructed Officer Crenshaw to retrieve Officer Hogue. *Id.* at 4. Lt. Moore then "went over to one of the office file cabinets and took out a <u>baton</u> . . . . [Lt. Moore] then came back to his desk and [told the plaintiff that if Officer Hogue said that plaintiff] was down in the dorm masturbating on her, he was going to beat [the plaintiff's] ass. . . ." *Id.*

When Officer Hogue returned to the shift office, she repeated her earlier report regarding the plaintiff's alleged infraction. *Id.* Sgt. Crenshaw then began asking Lt. Moore for the baton, and Officer Hogue stated, "Let [plaintiff] take it out now, I want to see it." *Id.* Hogue then started to pull on the plaintiff's underwear while "telling Lt. Moore to make me (Plaintiff) take out my (penis) and put it on the desk, she wanted to hit it with the (baton), but Lt. Moore stopped her and [began] to scold me again, . . . stating that he (Lt. Moore) was tired of inmates disrespecting his officers . . . ."

---

[12] "Call-time" and "re-call" are terms used for the morning wake-up regimen at the facility.

6

*Id.* Plaintiff again protested, explaining that Officer Hogue's observation of him was an accident. *Id.* at 5.

At that time, Officer Fails entered the room, and after being informed of the situation by Sgt. Hazley, began asking the plaintiff why he couldn't "stay out of trouble?" *Id.* When plaintiff attempted to explain his version of events, Officer Fails told him to "Shut the f___k up." *Id.* He then called Officer Hogue over to stand in front of the plaintiff, and gave her an "order to slap my teeth out of my mouth for disrespecting her . . . [S]he looked around, but did carry out her order." *Id.* at 5-6. "After this order was carried out, each of the named [defendants] attacked me and [began] to beat me as I have specified in the Complaint against them . . . [A]ll [were] involved in the beating, except Lt. Evan[s] . . . [He] stood by and failed to intervene to stop the beating." *Id.* at 6.

Plaintiff contends that he was never given "any order before this attack except (sic) by Officer Fails, 'to shut the f___k up.' Plaintiff was never ordered to turn around to be placed in handcuffs, . . . the Plaintiff did not resist or threaten anyone . . . . Plaintiff never fought back during the whole beating . . . . [He] was not a threat before or after this incident. . . .[The] officers motive was (sic) out of malice." *Id.*

Nurse Caffee's notes in the Department of Corrections Emergency Treatment Record show that immediately after the incident, the plaintiff's left eye was swollen, his left pupil was "irregular in shape," registered "no reaction to darkness or light," and the plaintiff was unable to read the eye chart. (Exhibit I to Document # 15) at 6. The plaintiff was bleeding from a "small lacerated area" on his upper lip. He was also bleeding from his nose. *Id.* Plaintiff complained that the right side of his ribs hurt. *Id.* A recheck of the plaintiff's left eye by Nurse Caffee later that day revealed that the plaintiff's range of movement in both eyes was "good," and "reacted to light equally." *Id.*

at 7. However, the plaintiff's "schlera" remained "slightly reddened" and plaintiff could only move his left eye and eyelid with difficulty. *Id.* The plaintiff read "20/25 on Smellen chart." *Id.* The plaintiff's case was referred to a physician to review, but no records of such review were produced by the defendants. *Id.*

## CRUEL AND UNUSUAL PUNISHMENT

The defendants have asserted the affirmative defense of qualified immunity. However, "[i]n this Circuit, a defense of qualified immunity is not available in cases alleging excessive force in violation of the Eighth Amendment, because the use of force 'maliciously and sadistically to cause harm' is clearly established to be a violation of the Constitution . . . . There is simply no room for a qualified immunity defense when the plaintiff alleges such a violation. . . . The only question, then, is whether the plaintiff has alleged facts sufficient to survive a motion to dismiss or motion for summary judgment . If he has done so, that is the end of the inquiry." *Skrtich v Thornton*, ---- F3d ----, 2002 WL 111299, *2 (11th Cir. 2002), *citing Johnson. v. Breeden*, 280 F.3d 1308, 1319 (11th Cir. 2002) (*quoting Whitley v. Albers,* 475 U.S. 312, 320-21, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986), and *Hudson v. McMillan*, 502 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992)). As such, the defendants' request for qualified immunity is due to be denied and the remainder of this opinion shall be devoted to whether the plaintiff has alleged sufficient facts to survive the defendants' motion for summary judgment.

The United States Supreme Court in *Estelle v. Gamble*, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976), stated that the Eighth Amendment "'embodies broad and idealistic concepts of dignity, civilized standards, humanity and decency,'. . . against which we must evaluate penal

measures. Thus, we have held repugnant to the Eighth Amendment punishments which are incompatible with 'the evolving standards of decency that mark the progress of a maturing society'. . . or which involve the 'unnecessary and wanton infliction of pain. . . .'" *Estelle*, 429 U.S. at 102 (citations omitted). "Where . . . the allegations of an Eighth Amendment violation come from activities of prison officials in the administration of the prison system, an evaluation of an inmate's claim requires analysis of both an objective component (Was the deprivation sufficiently serious?) and a subjective component (Did the officials act with a sufficiently culpable state of mind?)." *Fountain v. Talley*, 104 F. Supp. 2d 1345, 1350 (M.D. Ala. 2000), citing *Wilson v. Seiter*, 501 U.S. 294, 298-300, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991).

### Objective component

The Supreme Court has provided specific direction concerning this determination:

> The objective component of an Eighth Amendment claim is therefore contextual and responsive to "contemporary standards of decency." *Estelle, supra*, 429 U.S., at 103, 97 S. Ct., at 290. For instance, extreme deprivations are required to make out a conditions-of-confinement claim. Because routine discomfort is "part of the penalty that criminal offenders pay for their offenses against society," *Rhodes, supra*, 452 U.S., at 347, 101 S. Ct., at 2399, "only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson*, supra, 501 U.S., at 298, 111 S. Ct., at 2324 (quoting *Rhodes, supra*, 452 U.S., at 347, 101 S. Ct., at 2399) (citation omitted). A similar analysis applies to medical needs. Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are "serious." See *Estelle v. Gamble*, 429 U.S., at 103-104, 97 S. Ct., at 290-291.
>
> In the excessive force context, society's expectations are different. When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated. See *Whitley, supra*, 475 U.S., at 327, 106 S. Ct., at 1088. This is true whether or not significant injury is evident. Otherwise,

> the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury. Such a result would have been as unacceptable to the drafters of the Eighth Amendment as it is today. *See Estelle, supra,* 429 U.S., at 102, 97 S. Ct., at 290 (proscribing torture and barbarous punishment was "the primary concern of the drafters" of the Eighth Amendment); *Wilkerson v. Utah,* 99 U.S. 130, 136, 25 L. Ed. 345 (1879) ("[I]t is safe to affirm that punishments of torture . . . and all others in the same line of unnecessary cruelty, are forbidden by [the Eighth Amendment]").
>
> That is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action. *See Johnson v. Glick,* 481 F.2d, at 1033 ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights"). The Eighth Amendment's prohibition of "cruel and unusual" punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort "'repugnant to the conscience of mankind.'" *Whitley,* 475 U.S., at 327, 106 S. Ct., at 1088 (quoting *Estelle, supra,* 429 U.S., at 106, 97 S. Ct., at 292) (internal quotation marks omitted).

*Hudson v. McMillian,* 503 U.S. 1, 8-10, 112 S. Ct. 995, 1000, 117 L Ed. 2d 156 (1992).

The plaintiff has shown that his purported deprivation was sufficiently serious. The facts, construed in a light most favorable to the plaintiff, reflect a vicious and sadistic attack on the plaintiff's person. Further, the defendants' medical records do not dispute plaintiff's allegations of bruised ribs, a bloody lip, a bloody nose, and permanent injury to his left eye. These injuries are not *de minimis* and are sufficiently serious to meet the objective component of the Eighth Amendment analysis. The plaintiff's claims are sufficient at this juncture to state a violation of the prohibition against cruel and unusual punishment.

### Subjective Component

The subjective component of the Eighth Amendment claim is met if the force used on the plaintiff was applied "maliciously and sadistically for the purpose of causing harm." The Eleventh Circuit has only recently reiterated:

> Under the Eighth Amendment, force is deemed legitimate in a custodial setting as long as it is applied "in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm." *Whitley v. Albers*, 475 U.S. 312, 320-21, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.1973)); see also *Hudson v. McMillian*, 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). To determine if an application of force was applied maliciously and sadistically to cause harm, a variety of factors are considered including: "the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Hudson*, at 7-8, 112 S.Ct. 995; see also *Whitley*, 475 U.S. at 321, 106 S.Ct. 1078; *Harris v. Chapman*, 97 F.3d 499, 505 (11th Cir.1996). From consideration of such factors, "inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley*, 475 U.S. at 321, 106 S.Ct. 1078 (quoting *Johnson*, 481 F.2d at 1033). Moreover, an officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held personally liable for his nonfeasance. *See Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1560 (11th Cir.1993), as amended, 14 F.3d 583 (11th Cir.1994) ("A police officer has a duty to intervene when another officer uses excessive force."); *Byrd v. Clark*, 783 F.2d 1002, 1007 (11th Cir.1986) ("if a police officer, whether supervisory or not, fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place in his presence, the officer is directly liable under Section 1983"); *Fundiller v. City of Cooper City*, 777 F.2d 1436, 1442 (11th Cir.1985) ("an officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force, can be held liable for his nonfeasance"); *Harris v. Chanclor*, 537 F.2d 203, 206 (5th Cir.1976) ("a supervisory officer is liable under [Section] 1983 if he refuses to intervene where his subordinates are beating an inmate in his presence").

The plaintiff has set out facts which effectively preclude this court from granting summary judgment in favor of defendants Moore, Hazley, Crenshaw, Fails, Hogue, Louder, Talley, and Evans. The sworn allegations of the complaint, taken most favorably for the plaintiff, show there

are genuine disputes of material fact concerning whether the force was applied unnecessarily and maliciously. Plaintiff's evidence, if believed by a jury, would support a finding that he was beaten by the defendants unnecessarily, and not for any purpose associated with maintaining or restoring order. Therefore, the motions for summary judgment filed on behalf of defendants Moore, Hazley, Crenshaw, Fails, Hogue, Louder, Talley, and Evans with regard to plaintiff's Eighth Amendment cruel and unusual punishment claims are due to be denied.

An appropriate order shall be entered.

DONE this the 26th day of March, 2002.

JAMES H. HANCOCK
UNITED STATES DISTRICT JUDGE